UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MICHAEL NEWSOM,

    Plaintiff,

    v.

BREMERTON SCHOOL DISTRICT, an agency of the State of Washington; BETTE HYDE, Superintendent of Bremerton School District; KEVIN FERGUSON; DENISE ZASKE,

    Defendants.

Case No. C08-5094FDB

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

    Defendants [hereafter the School District] move for summary judgment on Plaintiff Newsom's 42 U.S.C. §1983 claims, which assert: (1) termination without opportunity to respond to accusations in violation of Plaintiff's due process rights under the Fifth and Fourteenth Amendments; and (2) deprivation of Plaintiff's opportunity to engage in his chosen profession in violation of Plaintiff's due process rights under the Fifth and Fourteenth Amendments.

**BACKGROUND**

    Newsom was employed by the Bremerton School District as a custodian; he became the temporary Supervisor of Custodial Service in 1997, which position eventually became permanent, and was a non-union position. Newsom was terminated from that position on March 17, 2005.

    The Blakney Declaration and attached exhibits 1 – 6 reflects the following events:

ORDER - 1

1  Newsom received a Letter of Reprimand from Kevin Ferguson dated February 25, 2004.
2  This letter followed a meeting between Ferguson and Newsom at which they discussed "alleged
3  racial slurs" by Newsom and "potential poor work place environment within the custodial
4  department." The letter referenced "recent Superintendent correspondence" and "recent
5  Superintendent memorandums sent to all district employees" referencing stated standards that are to
6  be "strictly followed and that an appropriate employee work environment is maintained." The letter
7  directed Newsom to "conduct a personal evaluation of the work place environment" and to "perform
8  a self-assessment." The letter concluded with a statement of availability to Newsom to assist him in
9  being a successful Custodial Supervisor." (Blakney Decl., Ex. 1)

10  On December 7, 2004, Newsom received a Performance Evaluation reflecting that Newsom
11  needed improvement in six out of eight areas. Newsom was also given a detailed action plan for
12  improvement. (Blakney Decl., Ex. 2 and Ex. 3)

13  A February 22, 2005 memorandum from Ferguson to Newsom, memorializing a meeting that
14  day, stated that "The performance results of the last 4 weeks clearly indicate a slide backwards in
15  your plan accomplishments." The memorandum noted what had to be accomplished and noted the
16  next two meeting dates of March 1 and March 7, 2005, following which, Ferguson would present a
17  written summary of the results seen and his recommendation for any further action. The letter noted
18  three possible outcomes depending upon how much of the plan is successfully completed, and noted
19  job termination as a possibility if all knowledge items were not complete and or behavioral changed
20  were not fully demonstrated. (Blakney Decl., Ex. 5)

21  A letter dated March 8, 2005 was sent to Newsom and contained a summary of his "action
22  Plan of Improvement and is presented as the documented results and proposed final action
23  explanation." The letter described Newsom and Ferguson's eleven Tuesday morning meetings, and
24  gave the reasons why there were no meetings on three Tuesdays; it described Newsom's opportunity
25  to provide information in support of plan-completed tasks. The letter also stated, that "as a separate
26  ORDER - 2

event, the personnel department issued a confidential survey to principals, head custodians and other custodians so that you might measure the district climate with respect to your actions." The letter contained a detailed analysis of Newsom's performance under the improvement plan. The letter concluded that Ferguson was recommending to the Superintendent, Dr. Bette Hyde that Newsom's employment with the Bremerton School District be terminated on March 31, 2005. Ferguson also advised Newsom that he had a right to review Ferguson's recommendation and to present evidence or arguments to the Superintendent:

> You have the right to a meeting with the Superintendent to review my recommendation for termination, the evidence in support of this recommendation and any evidence or arguments you wish to present as your response. If you wish to exercise this right, please contact Dr. Hyde's office by March 11, 2005 to set up a meeting.

(Blakney Decl. Ex. 4)

Finally, the March 21, 2005 letter from Personnel Director Denise Zaske informed Newsom that the Bremerton School District Board of Directors approved his termination as Custodial Supervisor for the District." The letter further advised him that he could appeal the decision to Kitsap County Superior Court:

> In accordance with RCW 28A.645.010 (copy attached), if you believe that you have been aggrieved by the determination of the Board of Directors to terminate you from the position of Custodial Supervisor, you may appeal this decision within 30 days to Kitsap County Superior Court.

(Blakney Decl. Ex. 6)

Plaintiff Newsom submits his own declaration in support of his opposition to summary judgment as well as a "Time Line." In these documents he acknowledges the racism concerns or allegations, (Newsom Decl. p. 3, Time Line, p. 3) and concern with giving false information. *Id.* Plaintiff acknowledges that he was put on an improvement plan. *Id.* Newsom does not acknowledge that he had any problems, points to others having lost their jobs because of Ferguson; and references rumors in support of his view of the facts. Newsom asserts that other potential employers have been

ORDER - 3

1  informed by Defendant Denise Zaske that he was terminated due to a "performance deficiency,"

2  (Newsom Decl. Ex. A.) and that, as a result, it has been impossible to find work in his chosen

3  profession. (Newsome Decl. p. 5

4      Having considered the parties' submissions on Defendants' Motion for Summary Judgment,

5  the Court concludes that there is no genuine issue of material fact, and that Defendants are entitled to

6  judgment as a matter of law.

## APPLICABLE LAW

### A. Summary Judgment Standard

Summary judgment is proper if the moving party establishes that there are no genuine issues of material fact and it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). If the moving party shows that there are no genuine issues of material fact, the non-moving party must go beyond the pleadings and designate facts showing an issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). Inferences drawn from the facts are viewed in favor of the non-moving party. *T.W. Elec. Service v. Pacific Elec. Contractors,* 809 F.2d 626, 630-31 (9th Cir. 1987).

Summary judgment is proper if a defendant shows that there is no evidence supporting an element essential to a plaintiff's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). Failure of proof as to any essential element of plaintiff's claims means that no genuine issue of material fact can exist and summary judgment is mandated. *Celotex*, 477 U.S. 317, 322-23 (1986). The nonmoving party "must do more than show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

When "the non-moving party relies only on his own affidavit to oppose summary judgment, [the party] cannot rely on conclusory allegations unsupported by factual data to create an issue of material fact." *Delange v. Dutra Construction. Co.*, 183 F.3d 916, 921 (9th Cir. 1999).

### B. Due Process

To prove a Section 1983 claim of procedural due process, a plaintiff must prove the

ORDER - 4

following elements: "(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; and (3) lack of process." *Kimes v. Stone*, 84 F.3d 1121, 1129 (9th Cir. 1996).

The right of an individual's right to contract and to engage in an occupation could be infringed if the government dismisses an employee based on a charge that calls into question his good name, honor, or integrity. *Board of Regents v. Roth*, 408 U.S. 564 (1972). A liberty interest is infringed if the government either (1) imposes a stigma and thereby forecloses the employee's freedom to obtain other employment, or (2) dismisses an employee on grounds that call into question his or her integrity, honor, or good name in the community. *Id.* at 573. Where such a liberty interest is implicated, it must give the employee notice and an opportunity to be heard, the purpose of which is to provide the person with an opportunity to clear his name. *Id.*, n. 12. A Plaintiff must show that the charge made against him in connection with his termination "must so severely damage the individual's reputation as to deprive him of other employment opportunities." *Hyland v. Wonder*, 972 F.2d 1129, 1141 (9th Cir. 1992); *see also, Gabbert v. Conn*, 131 F.3d 793 (9th Cir. 1997)(mere injury to professional reputation is insufficient). The Ninth Circuit elaborated on the showing that a plaintiff must make when alleging a liberty infringement in the employment context:

> [A] charge which infringes one's liberty can be characterized as an accusation or label given the individual by his employer which belittles his worth and dignity s an individual and, as a consequence is likely to have severe repercussions outside of professional life. Liberty is not infringed by a label of incompetence, the repercussions of which primarily affect professional life....

*Stretten v. Wadsworth Veterans Hospital*, 537 F.2d 361 (9th Cir. 1976)(Upholding due process claim dismissal on summary judgment). The allegations must be so severe that they effectively "exclude one permanently from the profession or trade or interrupt employment for a protracted period of time." *Roley v. Pierce County Fire Protection District No. 4*, 869 F.2d 491, 496 (9th Cir. 1989).

ORDER - 5

**DISCUSSION**

Regarding Newsom's claim that he was terminated without due process as he had no opportunity to respond to accusations against him, the School District has made a considerable showing that Newsom received ample due process. Newsom met with Ferguson, and the meetings were memorialized in writing to Newsom, as demonstrated in the outline set forth in the background above. That these meetings occurred and these documents received is not disputed. Indeed, Newsom acknowledges that he was placed on an improvement plan. He had many opportunities to discuss performance issues with his immediate supervisor. Even after termination was recommended, he had the opportunity to discuss matters with the Superintendent. Newsom has failed to show lack of due process. He received what is required: notice and an opportunity to respond. *See Cleveland Bd. Of Educ. v. Loudermill*, 470 U.S. 532, 535-44 (1985). The record herein demonstrates that there is no basis for his claim of termination without due process.

Regarding Newsom's claim of infringement of his liberty interest in being able to contract and engage in his occupation, Newsom has failed to carry his burden of demonstrating that he was terminated for reasons that satisfy the standard discussed above and elaborated upon in the Ninth Circuit. The "racism" comments were set forth as "alleged racial slurs" or that "allegations of racism surfaced," for example. Newsom asserts allegations of "insubordination" by the comment: "Suggestions towards improving department performance and customer interaction were initially rebuffed," and "not open to suggestions for improvement or change; rationalizes away and/or blames others for difficulties." (Blakney Decl., Ex. 2, p. 2) Newsom asserts dishonesty allegations by Ferguson's statement: "on at least one occasion [Plaintiff] caused major information misrepresentation." (Blakney Decl. Ex. 2, p. 2) Neither these statements nor the statement that he was terminated because of a "performance deficiency" rise to the level of being so severe that they effectively "exclude one permanently from the profession or trade or interrupt employment for a protracted period of time." *Roley*, 869 F.2d at 496. Moreover, as demonstrated in the written

ORDER - 6

materials submitted with the Blakney Declaration, there were multiple meetings between Newsom and his supervisor, he knew where his deficiencies lay, and he had many opportunities to be heard and to "clear his name."  Newsom's conclusion to the contrary is insufficient to rebut the School District's showing.

There being no genuine issue of material fact, and Defendants being entitled to judgment as a matter of law, Defendants' motion for summary judgment on the causes of action pursuant to 42 U.S.C. § 1983 will be granted and this case will be dismissed.

NOW, THEREFORE, IT IS ORDERED: Defendants' Motion for Summary Judgment [Dkt. # 16] is GRANTED and there being no further causes of action remaining, this case is DISMISSED.

DATED this 12th day of June, 2008.

FRANKLIN D. BURGESS
UNITED STATES DISTRICT JUDGE

ORDER - 7